## ALBERT BROWN, RESPONDENT, *v.* SOUTHERN PACIFIC COMPANY, APPELLANT.

PRACTICE.—NON-SUIT.—WAIVER.—Where a motion for a non-suit is made and overruled and thereupon defendant proceeds and puts in testimony, the error, if any, in refusing the non-suit is waived.

MASTER AND SERVANT.—NEGLIGENCE.—CONTRIBUTORY NEGLIGENCE.—Where there is evidence tending to show that the plaintiff, a brakeman, was ordered by the conductor to couple on an engine ahead of the engine on the train, and the fireman had been placed in charge of the " helper " engine by its engineer, and backed the engine back too rapidly, and the plaintiff did not know who was in charge of the engine, and owing to the speed at which the engine came back, was unable to get out of the way, but was caught by the engine and contributory negligence were properly left to the jury.

ID.—VICE.—PRINCIPAL.—FELLOW-SERVANT.—The duty of the master to provide so far as reasonable prudence can, competent workmen, is not a duty that can be delegated so as to exempt the master from liability on the ground of negligence of a fellow-servant, and an engineer putting a fireman in charge of an engine is a vice principal, and not a fellow-servant to a brakeman coupling the engine to another engine.

ID.—ID.—INSTRUCTIONS.—Where the court instructed the jury that the burden of proof was on the plaintiff to show negligence in the employment of the fireman, running an engine, or negli-

gence in his retention, by the failure to use reasonable care in his employment or in his retention, and such negligence could not be found solely from the facts and circumstances at the time of the accident, it was not error to refuse an instruction that if the jury found that the fireman was competent to perform his duties, including the incidental duty of temporarily handling the engine, then they should find for the defendant.

DAMAGES.—PERSONAL INJURY.—EXCESSIVE VERDICT.—Where a jury returns a verdict of twelve thousand dollars, afterwards lowered to ten thousand dollars, in a personal injury case for the loss of a hand to a man, who was earning at the time of the accident seventy-five dollars per month, but had fully recovered from the accident, except the loss of the hand; *held,* that the damages were excessive, showing that they were rendered under the influence of passion or prejudice, but upon remission of all damages over four thousand dollars, the judgment was affirmed.

APPEAL from a judgment of the district court of the first district and from an order refusing a new trial. The opinion states the facts.

*Messrs. Marshall and Royle,* for the appellants.

*Mr. J. L. Rawlins* and *Mr. L. R. Rogers,* for the respondent.

ANDERSON, J.:

This action is brought by plaintiff to recover damages alleged to have been sustained by reason of the negligence of the defendant, whereby plaintiff was so injured in one of his hands that it had to be amputated, and also for other bodily injuries. There was a trial to a jury, and a verdict for plaintiff for $12,000, for which amount the court gave judgment. There was a motion for a new trial, one of the grounds of which was that the damages awarded were excessive. Upon the hearing of this motion

the court ordered the judgment reduced to $10,000, by consent of plaintiff, and overruled the motion. The defendant brings this appeal from the judgment and from the order denying the motion for a new trial. The plaintiff was head brakeman on a train on the defendant's road at the time he received the injuries complained of. The train was going west, and reached Blue Creek station, on defendant's line of road, about ten o'clock at night. At this point there is a hill where it is customary to attach another engine, called a " helper " engine, to the train to help it up the ascent. The conductor of the train ordered plaintiff to couple the helper engine, which was standing on a side track, to the engine drawing the train. Plaintiff opened the switch, and called to the man in charge of the helper engine to bring it out onto the main track, so that the coupling could be made.

When the helper engine reached the main track plaintiff signaled the man in charge of it to back the engine up, which he did for about half the distance to the train, and stopped, when plaintiff adjusted the coupling-pin, and signaled him to continue to back the engine, while plaintiff ran to the stationary engine, stepped upon the cow-catcher, and picked up the push-bar to couple into the draw-head of the helper engine. The plaintiff testified that the engine came back with such speed and force that he failed to make the coupling, and was unable to get out of the way, and his left hand was caught between the bumpers of the two engines, and crushed, so that it had to be amputated. He also received a flesh wound in his right thigh. Plaintiff testified that the helper engine came back at the rate of four or five miles an hour. The helper engine was in charge of the fireman, he having been placed in charge of it by the engineer, who

was temporarily absent. The plaintiff testified that it was too dark for him to see who was in charge of the engine. It is claimed by plaintiff that the fireman, Fay, who was in charge of the helper engine, was not competent to act as engineer, and that it was his negligent and unskillful management of the engine that caused the accident, and that his incompetency to act as engineer was known to the regular engineer, who placed him in charge, or could have been known if proper inquiry and examination had been made with respect to his competency, and that it was negligence in the defendant company to permit him to be placed in charge of the engine. On behalf of the defendant it is claimed that Fay, although only a fireman, was competent to manage the engine, that due care was observed in employing him as fireman, and that, being in fact a competent engineer, it was not negligence to intrust the engine to him for the particular duty then in hand; and also that he was a fellow-servant with plaintiff, and that, therefore, plaintiff cannot recover, even if the negligence of Fay caused the injury complained of. It is further contended that the plaintiff was guilty of negligence contributing directly to the injury complained of, and for that reason cannot recover.

At the close of the evidence on behalf of the plaintiff, the defendant moved for a nonsuit, on the ground that no negligence on the part of the defendant had been shown; that, if any negligence had been shown which tended to produce the injury complained of, aside from the contributory negligence of plaintiff, it was the negligence of a fellow-servant; and that plaintiff was guilty of negligence which contributed directly to the injury complained of. The motion was overruled by the court, and this ruling is claimed as error. Whether the motion should have been sustained or not is now immaterial, as

the defendant waived any error there may have been in the ruling of the court, by failing to stand on its motion, and in offering evidence in its behalf after the ruling of the court had been made. *Insurance Co.* v. *Crandall,* 120 U. S. 527, 7 Sup. Ct. Rep. 685; *Railroad Co.* v. *Mares,* 123 U. S. 710, 8 Sup. Ct. Rep. 321; *Insurance Co.* v. *Smith,* 124 U. S. 405, 8 Sup. Ct. Rep. 534.

At the close of the evidence the defendant requested the court to instruct the jury that the evidence did not warrant a verdict for the plaintiff, and that they should return a verdict for the defendant, which the court refused to do, and this refusal of the court is one of the errors complained of. We have examined the evidence, and think there was no error in the court submitting the question of negligence to the jury.

The defendant requested the court to give the following instruction to the jury: "The jury are instructed that if they find from the evidence that fireman Fay caused the accident by too rapidly or otherwise backing the front engine onto the rear engine, yet if from the evidence they find that fireman Fay was a competent fireman, and qualified to perform the duties incident to or usual to his position, and that among those duties was that of handling the engine during the temporary absence of the engineer, then the jury are instructed to find for the defendant."

In view of the instructions which were given the jury by the court, we think there was no error in refusing this one. The jury were instructed that, "to entitle the plaintiff to recover, by reason of the negligence or incompetence of fireman Fay, they must find that not only was he negligent or incompetent, but that fact must have been known to the defendant, or should have been known to it, by the use of reasonable or proper care; and that they should not find that the fireman, Fay, was

negligent or incompetent from the circumstances and facts occurring at the time and occasion of this accident, but should take into consideration his prior record and conduct, as well as his subsequent career, and the burden of proof is on the plaintiff." Again, the court instructed the jury that "the jury must find from the evidence, not only that fireman Fay was incompetent or negligent before they can find a verdict for plaintiff, but they must also find from the evidence that the defendant was negligent, and failed to use reasonable and proper care in his employment, or in his retention, and the burden of proof is on the plaintiff." We think these and other similar instructions given by the court presented the question as to the liability of the defendant for the alleged negligent acts of fireman Fay, while acting in the capacity of engineer, as fairly and fully as the defendant was entitled to.

The jury returned special findings with their general verdict, in which they found every material fact in favor of the plaintiff, and it is insisted that neither the special findings nor the general verdict are supported by the evidence. But we need not discuss these questions, as the case must be reversed on another ground.

We think the damages awarded by the jury grossly excessive, and, even as reduced by the court, the amount of plaintiff's recovery is greatly in excess of what he is justly entitled to. The plaintiff testified that he was twenty-two years old when he was injured; that he was confined to the house about two and a half or three weeks, most of the time in bed, on account of his injuries, and that it was about a month before he could go out on the street, and that after getting out on the street cold bothered his arm some; that he suffered pain longer with his leg than with his arm; that it was about three

weeks before his leg healed up. He further testified that he had been employed as a brakeman about two and a half months; that before he began work as a brakeman he worked at home for his father on a farm; that he was in good health before he was injured, and earned his living by physical labor, and was not educated for any profession. He also testified that since he recovered from his injuries his health had been good, and that he is now a strong, healthy man; that he works for his father on the farm, but that about all he does is to do chores and work in the garden. He also testified that at the time he received the injuries complained of he was receiving from the railroad $70 per month, and something additional for extra time, making his wages at that time amount to $75 or $80 per month. A railway company is entitled to have its rights and liabilities determined by the same rules of law and justice that apply in suits between individuals. For an injury similar to the one complained of in this case, if inflicted by an individual, no jury would find such a verdict as was returned in this case. It is not claimed that the injury was wanton or willful, and there was therefore no room for vindictive damages. The injury to the plaintiff was merely an accident, resulting, it is true, as found by the jury, from the carelessness of the defendant company, but still an accident, in the sense that it was not intentional. While the injury to plaintiff is severe, it only partially disables him, and there are many occupations in which he will be able to earn nearly, if not quite, as much as he usually earned before the accident. By the verdict, as rendered, the plaintiff was given at once a nice little fortune, more than the majority of men earn in a life-time, and vastly more than the great majority of men accumulate by a life of toil and privation. The

annual income he would derive from the amount of the verdict, at the ordinary rate of interest, would be about one-fourth more than he was getting when he was injured, and the interest on the judgment, as finally modified, would exceed the highest wages he testified to ever having earned before the accident.

There can be no reasonable doubt that the heavy damages awarded by the jury in this case were given under the influence of passion or prejudice, and, if passion or prejudice swayed the minds of the jury in awarding damages, the same or other improper influences may have operated upon their minds in determining the questions ef fact necessary to fix the liability of the defendant. Doubtless the twelve men who composed the jury were, individually, honest men, but we are forced to the conclusion that they did not properly appreciate their duties and responsibilities as jurors in this case. The popular prejudice against railway corporations may not be wholly undeserved, but it should not be permitted to find expression in unjust verdicts. When the prejudice against these corporations becomes so strong as to taint the administration of justice, it becomes the duty of the courts to interfere. However reluctant to disturb the verdict of a jury for such a cause, we think the verdict in this case so excessive that it ought not to stand. While we consider it our duty to hold railway companies to a strict accountability for damages caused by their negligent or wrongful acts, yet we also feel it our duty to not permit a glaring injustice to be done them to satiate the demands of popular prejudice. The judgment must be reversed, and the cause remanded.

ZANE, C. J., BLACKBURN, J., and MINER J., concurred.

Thereupon, after the reading of the opinion of the

court, the respondent, by his counsel, offered in open court to remit of the judgment herein all except $4,000, and the same being so remitted, it was ordered that the judgment herein be affirmed for $4,000, and costs.