## WOITTE et al. v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit.
May 9, 1927.

Rehearing Denied June 13, 1927.

No. 4895.

1. Indictment and information ⬡87(2)—Reference in charge of conspiracy to time set out in charge of overt acts sufficiently fixes time of conspiracy.

Charge of conspiracy in indictment is made definite as to time by reference in charge of conspiracy to time set out in charge of overt acts.

2. Conspiracy ⬡23—Place of conspiracy is immaterial, if overt acts were committed within court's jurisdiction.

Place of conspiracy is immaterial, provided overt acts were committed within jurisdiction of court.

**3. Criminal law ⬦113—Indictment charging conspiracy to transport liquor transferred from boat into district of Oregon held to properly lay venue within such district.**

Indictment for conspiracy, alleging transportation of liquor transferred on high seas from place of transfer into state and district of Oregon *held* to properly lay venue within such district.

**4. Conspiracy ⬦23—Citizens or subjects of foreign nation beyond territorial jurisdiction may commit offense of conspiracy against United States (Criminal Code, § 37 [Comp. St. § 10201]).**

Citizens or subjects of foreign nation beyond territorial jurisdiction of United States, and never having been within jurisdiction thereof, may commit offense of conspiracy defined by Criminal Code, § 37 (Comp. St. § 10201).

**5. Intoxicating liquors ⬦246—Seizure of liquor-laden Canadian vessel 16 miles off coast held justified, in view of evidence that transshipment to fast launch was contemplated.**

Seizure of liquor-laden Canadian vessel 16 miles off coast *held* not unlawful under treaty between United States and Great Britain, in view of evidence warranting conclusion that liquor was intended to be conveyed into the United States by launch which could readily traverse distance in space of one hour.

**6. Criminal law ⬦478(2)—Bank clerk held competent to identify initials of customer, whose signature he was familiar with through business transactions.**

Bank clerk, in charge of commercial department of bank, *held* competent for purpose of identifying initials of customer, whose signature he was familiar with through business transactions with the bank.

**7. Criminal law ⬦491(2)—Signature card from bank held sufficiently identified for admission in evidence for purpose of comparison.**

Signature card of customer of bank, identified by clerk in charge of commercial department as card that was kept in bank and acted upon in honoring checks drawn in customer's name, *held* sufficiently identified for admission in evidence for purpose of comparison.

In Error to the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Jacob Woitte and others were convicted of conspiracy to violate the Tariff Act of 1922, and of bringing into the United States merchandise without declaring it to customs officers and paying duties thereon, and of conspiracy to violate National Prohibition Act, and of unlawful possession and transportation of liquor, and they bring error. Affirmed.

James B. O'Connor and Harold C. Faulkner, both of San Francisco, Cal., and E. M. Morton and John C. McCue, both of Portland, Or., for plaintiffs in error.

George Neuner, U. S. Atty., and J. O. Stearns, Jr., Asst. U. S. Atty., both of Portland, Or.

Before RUDKIN, Circuit Judge, and DIETRICH and KERRIGAN, District Judges.

RUDKIN, Circuit Judge. This is a writ of error to review a judgment of conviction under an indictment containing eleven counts.

The first count charged that the plaintiffs in error and others, at a time and place to the grand jurors unknown, conspired to violate the Tariff Act of 1922 (42 Stat. 858), by importing and bringing into the United States and into the state and district of Oregon, large quantities of whisky, gin, and other intoxicating liquors fit for beverage purposes, all of which merchandise was and would be dutiable, without declaring said merchandise to any customs officers of the United States or to any person or officer whatsoever authorized to receive such declarations and to impose, collect, and receive, on behalf of the United States, duties thereon, and without paying any duties thereon, and to receive, conceal, transport, and sell merchandise thus imported, well knowing that the same had been imported and brought into the United States contrary to law. The commission of certain overt acts was then charged to effect the object of the conspiracy. The second, third, and fourth counts charged the importation and bringing into the United States and into the state and district of Oregon of the same merchandise from the Dominion of Canada on different dates, without declaring said merchandise to any customs or other officer of the United States and without paying any duties thereon. The fifth count charged a conspiracy to violate the National Prohibition Act (Comp. St. § 10138¼ et seq.) by selling, bartering, transporting, importing, keeping, and possessing intoxicating liquor for beverage purposes in certain counties in the state and district of Oregon, and the commission of certain overt acts to effect the object of the conspiracy. The sixth count charged the unlawful possession of intoxicating liquor in the state and district of Oregon on November 27, 1924, and the seventh count charged the unlawful transportation of the same intoxicating liquor at the same time and place. The eighth count charged the unlawful possession of intoxicating liquor in the state and district of Oregon on December 5, 1924, and the ninth count charged the unlawful transportation of the same intoxicating liquor at

the same time and place. The tenth count charged the unlawful possession of intoxicating liquor in the state and district of Oregon on January 16, 1925, and the eleventh count charged the unlawful transportation of the same intoxicating liquor at the same time and place. A verdict of guilty was re-turned as to all eleven counts, followed by a single judgment or sentence of fine and imprisonment.

[1-3] Inasmuch as the last six counts charging possession and transportation will not support the judgment of imprisonment, either singly or combined, we will not further consider them. Indeed, we need only refer to the first count if that is sufficient in law to support the judgment. The first count, in plain and concise language, charged a conspiracy to commit certain offenses against the United States and the commission of certain overt acts to effect the object of the conspiracy, and is amply sufficient in both form and substance, unless open to one or more of the objections urged against it by the plaintiffs in error. It is contended that the charge that the parties conspired, at a time and place to the grand jurors unknown, is insufficient, and that the overt acts charged were committed without the state and district of Oregon and without the jurisdiction of the court. The time of the conspiracy was made definite by reference in the charge of conspiracy to the time set out in the charge of the overt acts (Fisher v. United States [C. C. A.] 2 F.[2d] 843); the place of the conspiracy was immaterial, provided the overt acts were committed within the jurisdiction of the court (Hyde v. United States, 225 U. S. 347, 32 S. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614; Brown v. Elliott, 225 U. S. 392, 32 S. Ct. 812, 56 L. Ed. 1136; Ford v. United States, 47 S. Ct. 531, 71 L. Ed. —, decided by the Supreme Court April 11, 1927); and, while the overt acts charged the transfer of intoxicating liquors from one boat to another on the high seas and without the state and district of Oregon, they likewise charged the transportation of the liquor thus transferred from the place of transfer into the state and district of Oregon, and the venue was therefore properly laid in that district.

[4] It is next contended that citizens or subjects of a foreign nation beyond the territorial jurisdiction of the United States, and never having been within the jurisdiction thereof, cannot commit the offense defined by section 37 of the Criminal Code (Comp. St. § 10201). This same contention was urged in the Ford Case, supra, and, at the request of all parties concerned, a decision in this case was to be withheld until the Ford Case was decided by the Supreme Court. In answer to the contention now made, the Supreme Court there said:

"The conspiracy was continuously in operation between the defendants in the United States and those on the high seas adjacent thereto, and of the four overt acts committed in pursuance thereof, three were completed and took effect within the United States, and the fourth failed of its effect only by reason of the intervention of the federal officers. In other words, the conspiring was directed to violation of the United States law within the United States, by men within and without it, and everything done was at the procuration and by the agency of each for the other in pursuance of the conspiracy and the intended illegal importation. In such a case all are guilty of the offense of conspiring to violate the United States law whether they are in or out of the country."

[5] The ruling of the court below refusing to suppress certain evidence is assigned as error. The motion to suppress was based on the following facts disclosed during the progress of the trial: On the afternoon of February 3, 1925, one of the United States Coast Guard cutters was cruising along the Washington coast looking for the lifeboat and crew of a grounded vessel. While thus engaged, the Pescawha, a vessel of Canadian register, was sighted about 5 miles distant and about 6½ miles from the Washington coast. The Pescawha was then headed to sea, and the cutter followed in pursuit. The cutter overtook the Pescawha at a distance of 16 miles from the Washington coast, and the officers of the cutter boarded her and demanded her papers. The master of the Pescawha refused to exhibit the papers, but, when he was informed that his cargo would be inspected, he admitted that the entire cargo consisted of about 1,000 cases of intoxicating liquor. The Pescawha was thereupon seized and towed into Astoria, where the master and five members of the crew were placed under arrest. Before the trial, a motion was made to suppress all evidence found as a result of the seizure on the ground that the seizure was not justified by the Treaty of May 22, 1924, between United States and Great Britain. The motion to suppress was then denied, but with leave to renew later. The motion was renewed at the close of the testimony and was again denied. By article 2 of the treaty in question, his

Britannic Majesty agrees that he will raise no objection to the boarding of private vessels under the British flag outside the limits of territorial waters by the authorities of the United States, in order that inquiries may be addressed to those on board and an examination made of the ship's papers for the purpose of ascertaining whether the vessel or those on board are endeavoring to import or have imported alcoholic beverages into the United States, in violation of the laws there in force. When such inquiries and examination show a reasonable ground for suspicion, a search of the vessel may be instituted, and, if there is reasonable cause for belief that the vessel has committed or is committing or attempting to commit an offense against the laws of the United States prohibiting the importation of alcoholic beverages, the vessel may be seized and taken into a port of the United States for adjudication in accordance with its laws.

The rights thus conferred shall not be exercised at a greater distance from the coast of the United States than can be traversed in one hour by the vessel suspected of endeavoring to commit the offense. In cases, however, in which the liquor is intended to be conveyed to the United States by a vessel other than the one boarded and searched, it shall be the speed of such other vessel and not the speed of the vessel boarded which shall determine the distance from the coast at which the right under the treaty can be exercised.

We may concede, for the purposes of this case, that the distance from the coast, within which the right of search may be exercised, is to be measured from the point of seizure, even in cases of flight, and we may further concede that the 16 miles to the coast could not be traversed by the Pescawha in one hour. But, conceding this, the court below was warranted in finding that the liquor was intended to be conveyed into the United States from the Pescawha by the launch Azalea, and that the distance from the place of seizure to the coast could readily be traversed by the launch in the space of one hour. There was no error, therefore, in the ruling complained of. Ford v. United States, supra.

Other contentions are made as to the construction and effect of the treaty, but all such contentions have been settled adversely to the plaintiffs in error by the decision in the Ford Case.

A note signed with the initials "J. W.," and addressed to the master of the Pescawha, was offered in evidence; the government contending that the initials "J. W." were signed by the plaintiff in error Jacob Woitte. There was offered in evidence at the same time, for purposes of comparison, a signature card from the Bank of Italy at San Francisco, containing the signature "Jacob Woitte." The admission of this testimony is assigned as error. The clerk in charge of the commercial department of the bank testified that he was not personally acquainted with Woitte, but had seen him occasionally in the bank for a couple of years last past; that he had never seen Woitte write his name, but he was a customer of the bank, and the witness had become familiar with his signature through business transactions with the bank, and that the initials "J. W." on the note were, in his opinion, signed by Woitte. The witness further testified that he did not see Woitte sign the signature card, but that the card was kept in the bank and was acted upon by the bank in honoring checks drawn in the name of Woitte.

[6] We think the competency of this witness was sufficiently shown. As said by the court in Rogers v. Ritter, 12 Wall. 317, 20 L. Ed. 417:

"It is settled everywhere that, if a person has seen another write his name but once he can testify, and that he is equally competent, if he has personally communicated with him by letter, although he has never seen him write at all. But is the witness incompetent unless he has obtained his knowledge in one or the other of these modes? Clearly not, for in the varied affairs of life there are many modes in which one person can become acquainted with the handwriting of another, besides having seen him write or corresponded with him. There is no good reason for excluding any of these modes of getting information, and if the court, on the preliminary examination of the witness, can see that he has that degree of knowledge of the party's handwriting which will enable him to judge of its genuineness, he should be permitted to give to the jury his opinion on the subject."

[7] We think, too, that the signature card was sufficiently identified for all practical purposes. There was no error in the rulings complained of.

There is some discussion in the brief relating to the other counts in the indictment, and the sufficiency of the testimony is challenged, but these call for no comment. The evidence was ample to establish the existence of the conspiracy and to connect each

of the plaintiffs in error therewith, and, finding no error in the record, the judgment is affirmed.