## VENDETTI v. UNITED STATES.[*]

Circuit Court of Appeals, Ninth Circuit.
August 6, 1928.

No. 5362.

**1. Conspiracy ⬿47, 48—Evidence held to present jury case on charges of conspiracy to sell liquors and maintain nuisance, and to warrant conviction.**

Evidence *held* sufficient to sustain conviction for conspiracy to unlawfully possess and sell intoxicating liquors and to maintain common nuisance for sale of liquors as to one engaged in restaurant business, and denial of defendant's motion for directed verdict on ground of insufficiency of evidence was not error.

**2. Conspiracy ⬿45—Acts occurring before alleged formation of conspiracy are admissible, if they tend to prove ultimate facts.**

In conspiracy case, it is permissible to show acts which occurred some time before alleged formation of the conspiracy, provided they have some bearing on and tend to prove ultimate facts at issue.

**3. Conspiracy ⬿45—Evidence of defendant's applications for light and telephone service, made before date of liquor conspiracy charged, held admissible.**

In prosecution for conspiracy to unlawfully sell and possess intoxicating liquors, and to conduct and maintain common liquor nuisance in restaurant, applications signed by defendant for use of light and telephone on premises, though made prior to date of alleged conspiracy, *held* admissible, where applications covered period of conspiracy, and other evidence showed defendant paid for telephone during that time.

**4. Criminal law ⬿1037(2)—Argument that defendant was "vulturous proprietor" of liquor nuisance and perjurer held not to require reversal, where court was not requested**

[*]Rehearing denied October 1, 1928.

*to admonish jury un ground of prejudived language.*

In prosecution for conspiracy to sell liquor and maintain liquor nuisance in restaurant, argument of counsel for government, in which he referred to defendant as "vulturous proprietor of the place," and in which he stated that defendant had deliberately lied and was guilty of perjury, *held* not outside bounds of permissible argument, and in any case not to warrant reversal, where no objection was made to the remarks on the ground that they contained language prejudicial to defendant, and court was not requested to instruct jury to disregard them.

In Error to the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Mike Vendetti was convicted of a conspiracy to possess and sell intoxicating liquors and to conduct and maintain a common nuisance, and he brings error. Affirmed.

Charles H. Miller, of Seattle, Wash., for plaintiff in error.

Thomas P. Revelle, U. S. Atty., of Seattle, Wash., and John T. McCutcheon, Asst. U. S. Atty., of Tacoma, Wash.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

GILBERT, Circuit Judge. The plaintiff in error, hereinafter called the defendant, together with Nelson, Moore, and Carstens, was indicted on a charge of conspiracy entered into on or about November 28, 1925, to unlawfully possess and sell intoxicating liquors, and to unlawfully conduct and maintain a common nuisance at 1303 Pacific avenue, Tacoma, Wash., by there keeping and selling intoxicating liquors, which conspiracy was alleged to be a continuing one from November 28, 1925, to June 3, 1926, and the indictment set forth numerous overt acts done in pursuance of the conspiracy. A severance was granted as to the other three, and the defendant went on trial alone and was convicted.

[1] The denial of the defendant's motion for a directed verdict on the ground of the insufficiency of the evidence to justify a verdict of guilty is assigned as error. We think that the motion was properly denied. The defendant and one Hewitt were the owners of a café and restaurant. It was shown that the defendant paid for the electric light service therein from September 17, 1925, to February 2, 1927, and that he signed up for the telephone service on November 17, 1925, that he paid the monthly bill for telephone service from May 21 to June 20, 1926, and

that during the period charged in the indictment there was no change in the telephone service to any other customer. There was evidence that on January 13, 1926, two government officers bought drinks of moonshine whisky in the restaurant, and that on January 27, 1926, they bought drinks from Moore; that at that time the defendant was seen there talking with Nelson behind the bar; that on February 17, 1926, the officers bought Scotch whisky at the same place, and saw other customers being served with intoxicating liquor, and that Nelson and Moore were attending the bar; that on February 23, 1926, the officers were again at the premises and saw the defendant sitting there talking with Nelson, and that in the defendant's presence they each bought a half pint of moonshine whisky; that on June 3, 1926, one of the officers bought a drink of moonshine whisky from Carstens; that on February 23, 1926, when an officer asked the defendant if they could get something to drink, and "if they were closing up," he replied, "No, you can get something to drink;" and that thereupon Nelson came up and, after talking to the defendant, went with the officer into the barroom, where Moore was, and the officer purchased a half pint of whisky.

There was evidence that on April 24, 1926, a collector went to the premises to collect a debt from the defendant, and that the defendant said that "business was rather dull, to see him on the 29th"; that on May 25, 1926, the witness went again and received from the defendant the same excuse for not paying the debt; that at that time he found the defendant in the basement, and that on both occasions the defendant was in ordinary street clothes, without hat or overcoat. There was the testimony of the collector for the telephone company that the defendant admitted to him that he was the owner of the restaurant, and offered him a drink of gin. In addition to the direct testimony, it is obvious from the record that the defendant's own improbable testimony must have furnished evidence against him. He testified that, about November 20, 1925, which would be about eight days before the formation of the conspiracy as charged in the indictment, he sold out his interest in the premises to his partner Hewitt, and from that time on had nothing to do therewith; that Hewitt paid him no money, but gave him a chattel mortgage, which the defendant himself prepared, although he had never before drawn a chattel mortgage; that the mortgage was not put on record nor executed before a notary, but was signed before witnesses, whose names he had forgotten, and to the question where the

mortgage was he answered that he did not know. He testified that he had never foreclosed the mortgage; that some time in 1926, about June or July, he had requested one Rawlins to sell the furniture for him, and told Rawlins that he had a mortgage on it and that he wanted to get his money out of the mortgage. But Rawlins testified that nothing was said about a mortgage, and that the request to sell the furniture was made in 1927.

[2, 3] No merit is found in the assignment that the court erred in refusing to instruct the jury that the applications for light and telephone service for the premises described in the indictment could not be considered by the jury, for the reason that they were made prior to the date of the alleged conspiracy. The applications were signed by the defendant, and were for the use of light and telephone on the premises during the entire period covered by the alleged conspiracy, and the evidence subsequently admitted showed that the defendant was paying for the telephone during the period from May 1 to June 20, 1926. In a conspiracy case, it is admissible to show acts which occurred some time before the alleged formation of the conspiracy, provided that they have some bearing on and tend to prove the ultimate facts at issue. 12 C. J. 635; Goldberg v. United States (C. C. A.) 295 F. 447, 449. The applications were not received as evidence of acts done in pursuance of the conspiracy, but they were admitted as proof tending to show the defendant's participation in the management of the restaurant during the period of the existence of the conspiracy charged in the indictment.

[4] It is assigned as error that the court below allowed counsel for the government to make improper and highly prejudicial statements and argument to the jury, in that he went outside of the record and charged the defendant with being the "vulturous proprietor of the place," and again went outside of the record to charge that the defendant would not soil his already dirty hands by selling liquor, because he was taking too much of a chance himself, and again went outside of the record to charge the defendant with being a liar and a perjurer, "there being no evidence in the record to substantiate said statements." But the record shows that, when counsel for the government stated that one of the employés of the restaurant was working as a bartender, and that "Mike Vendetti, the vulturous proprietor of the place, who naturally would get these poor fellows to come work for him," etc., the objection interposed by defendant's counsel was not to the language used by the district attorney, but was expressly based solely on the ground that there was no evidence that Vendetti ever employed any of the men. Again, when the district attorney said to the jury, "The defendant in this case came to you and deliberately lied to you when he told you he had told him that; he lied as well in other things. I don't usually call a man a liar or a perjurer. I don't like to do it, but I can't help it." No objection was made at any time to any of the remarks of the district attorney on the ground that they contained language prejudicial to the defendant, nor was the court below requested to instruct the jury to disregard them. We are not convinced that anything said by the district attorney was beyond the line of permissible argument. Remus v. United States (C. C. A.) 291 F. 501, 511; Di Carlo v. United States (C. C. A.) 6 F.(2d) 364, 368; Zottarelli v. United States (C. C. A.) 20 F.(2d) 795, 798. And we are of the opinion that, if the remarks were improper and censurable, they were not so plainly unwarranted and so grossly improper as to be clearly injurious to the accused, so that they could not be waived by his counsel.

In Diggs v. United States (C. C. A.) 220 F. 545, 556, affirmed 242 U. S. 470, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168, this court held that improper remarks in argument by the prosecuting attorney, although prejudicial, do not justify reversal, unless the court has been requested to instruct the jury to disregard them, and has refused to do so; and in Johnston v. United States, 154 F. 445, we said: "Invective based on the evidence and inferences legitimately to be derived therefrom are not inhibited, and it is usually within the discretion of the trial court to determine whether or not the limits of professional propriety have been exceeded." In Silkworth v. United States (C. C. A.) 10 F.(2d) 711, 721, in answer to the contention that in such a case action should have been taken by the trial judge on his own initiative, the court held that such was not the rule, citing Diggs v. United States (C. C. A.) 220 F. 545, and other cases, and such seems to have been the view of the court in Brooklyn Heights R. Co. v. Ploxin (C. C. A.) 294 F. 68, a case in which plaintiff's counsel, in addressing the jury had referred to the defendant's proof as "a rotten, seething mass of perjury."

It is not ground for reversal that the trial court denied the motion for a new trial. The judgment is affirmed.