**HESKETT et al. v. UNITED STATES.**

**No. 6704.**

Circuit Court of Appeals, Ninth Circuit.

May 16, 1932.

Rehearing Denied June 24, 1932.

Will R. King, of Los Angeles, Cal., for appellants.

Samuel W. McNabb, U. S. Atty., and Harry Graham Balter, Asst. U. S. Atty., both of Los Angeles, Cal.

Before WILBUR and SAWTELLE, Circuit Judges.

SAWTELLE, Circuit Judge.

The appellants were convicted under both counts of an indictment. One count charged that they conspired to pretend to be officers of the United States, and the other alleged that the impersonations were actually carried out, as is hereinafter more fully set forth.

According to the testimony, both defendants paid several visits to the home of Toyoki Sonoda, at Downey, Los Angeles County, Cal. The evidence tended to show that they said they were "immigration officers," showed badges, asked about passports, and demanded money of Sonoda. The defendants admitted visiting the Sonoda ranch, but denied any impersonation or any demand of money from Sonoda. Heskett declared that they went to the ranch to investigate the murder of a Japanese for the capture of whose slayer a reward of $5,000 had been offered. Heskett added that "I took Mr. Pirotte along because he was an officer of the law." Testimony of a deputy sheriff of Los Angeles, recalled by the defense, developed that, at the time of the visits to the Sonoda ranch, Pirotte was "a special deputy sheriff," who, the witness added, is simply "a person who is given a badge—in my opinion it is nothing more than a permit to carry a gun."

There are eighteen assignments of error, only seven of which, however, are included among the "Specifications of Error Relied On" in the appellant's brief. While we will discuss only the specifications, we have examined the other assignments also, and find that they disclose no reversible error.

The first assignment and specification attack the sufficiency of the indictment. The first count was drawn under section 37 of the Criminal Code (18 USCA § 88), which reads as follows: "Conspiring to commit offense against United States. If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than $10,000, or imprisoned not more than two years, or both."

The first count sets forth in substance—omitting the formal parts—that the defendants, "prior to the dates of the commission of the overt acts hereinafter set forth, and continuously thereafter to and including the date of finding and presentation of this indictment, * * * did * * * knowingly, * * * conspire, * * * with each other, and with divers other persons whose names are to the grand jurors unknown to commit, * * * an offense against the United States of America and the laws thereof, the offense being to knowingly, * * * and with intent to defraud one Toyoki Sonoda, falsely assume and pretend to be officers and employees of the United States, acting under the authority of the United States, to-wit: Immigrant Inspectors of the United States, and to * * * take upon themselves to act as such officers, when in truth and in fact, as they, the said defendants, then and there well knew, they, the said defendants, were not and would not be officers and employees of the government of the United States," etc.

In the same count, it is further alleged that, in pursuance of the conspiracy, the defendants committed two overt acts; namely, made two visits to the residence of Toyoki Sonoda, in Downey.

The appellants object that the allegations of these overt acts are insufficient because they state merely the commission of lawful acts, that is, visiting the residence of Sonoda on two named dates. But these visits were alleged to have been "in pursuance of * * * and to effect the object, design and purpose of" the conspiracy laid in the charging part of the indictment. The language of the court in Gruher v. United States (C. C. A. 2) 255 F. 474, 476, 477, is strikingly applicable:

"The indictment not only alleges one but three overt acts 'in pursuance and to effect the object of the conspiracy.' It declares:

"1. That on August 8th defendant called upon Bernfeld, one of his coconspirators, at a certain specified place in the city of New York. * * *

"It is true that in itself there was nothing unlawful in the act of the defendant in calling on Bernfeld. But there is no rule of law which requires an overt act to be an unlawful act. It may be in itself a perfectly lawful act which becomes unlawful only when it is committed 'in pursuance of and to effect the object' of the conspiracy. It was not necessary to allege in what manner the overt act would tend to effect the object of the conspiracy. Houston v. United States, 217 F. 853, 133 C. C. A. 562; United States v. Wupperman (D. C.) 215 F. 135; United States v. Shevlin (D. C.) 212 F. 343."

See, also, Rumely et al. v. United States (C. C. A. 2) 293 F. 532, 550, certiorari denied 263 U. S. 713, 44 S. Ct. 38, 68 L. Ed. 520.

The objection is also made that the indictment is insufficient because no date or time is alleged respecting the formation of the conspiracy charged in the first count. This is well answered in Rubio et al. v. United States (C. C. A. 9) 22 F.(2d) 766, 767: "Speaking generally, the government has no knowledge of the exact time or place of the formation of the conspiracy, and to require it to specify the particular time and place, and limit the proof to that time and place, would defeat almost every prosecution under this act. For these reasons, we are satisfied that the time and place of the formation of the conspiracy are sufficiently fixed by the overt acts set forth in the indictment. Fisher v. United States (C. C. A.) 2 F.(2d) 843; Woitte v. United States (C. C. A.) 19 F.(2d) 506." Certiorari denied 276 U. S. 619, 48 S. Ct. 213, 72 L. Ed. 734. See, also, United States v. Kissel and Harned, 218 U. S. 601, 607, 31 S. Ct. 124, 54 L. Ed. 1168; Jones et al. v. United States (C. C. A. 9) 162 F. 417, 427, certiorari denied 212 U. S. 576, 29 S. Ct. 685, 53 L. Ed. 657; Breese et al. v. United States (C. C. A. 4) 203 F. 824, 830; Bradford et al. v. United States (C. C. A. 5) 152 F. 616, affirming United States v. Bradford et al. (C. C. La.) 148 F. 413, 417.

The second count of the indictment was drawn under section 32 of the Criminal Code (18 USCA § 76), which reads as follows: "Falsely pretending to be United States officer. Whoever, with intent to defraud either the United States or any person, shall falsely assume or pretend to be an officer or employee acting under the authority of the United States, or any department, or any officer of the Government thereof, and shall take upon himself to act as such, or shall in such pretended character demand or obtain from any person or from the United States, or any department, or any officer of the Government thereof, any money, paper, document, or other valuable thing, shall be fined not more than $1,000, or imprisoned not more than three years, or both."

Omitting the formal parts, the second count sets forth that the defendants "on or about the 15th day of October, A. D. 1930, at Downey, * * * did knowingly, * * * and with intent to defraud * * * one Toyoki Sonoda, falsely assume and pretend to be officers and employees of the United States acting under the authority of the United States, to-wit: Immigrant Inspectors of the Department of Labor of the United States, and did then and there take upon themselves to act as such officers, when in truth and in fact, as they, the said defendants, then and there well knew, they, the said defendants, were not agents and employees of the government of the United States," etc.

It is contended that this count was insufficient to apprise the appellants with reasonable certainty of the nature of the accusation against them. A similar objection was made in Lamar v. United States, 241 U. S. 103, 116, 117, 36 S. Ct. 535, 539, 60 L. Ed. 912, where the defendant was contesting a conviction under section 32 of the Criminal Code.

The Supreme Court there said: "It is urged that the indictment is defective because of its failure to describe the circum-

stances of the offense. It suffices to say that after considering them we think that the many authorities cited to support the contention are wholly inapplicable to the conditions disclosed by the record, and we are further of opinion that those conditions make it clear that the contention is devoid of merit. We say this because it will be observed from the text of the indictment which we have previously reproduced that it clearly charges the illegal acts complained of and the requisite fraudulent intent, states the date and place of the commission of the acts charged, and gives the name and official character of the officer whom the accused was charged with having falsely personated. It is, moreover, to be observed that there is not the slightest suggestion that there was a want of knowledge of the crime which was charged or of any surprise concerning the same, nor is there any intimation that any request was made for a bill of particulars concerning the details of the offense charged. Under this situation we think that the case is clearly covered by § 1025, Revised Statutes [18 USCA § 556]. Connors v. United States, 158 U. S. 408, 411, 15 S. Ct. 951, 39 L. Ed. 1033, 1034; Armour Packing Co. v. United States, 209 U. S. 56, 84, 28 S. Ct. 428, 52 L. Ed. 681, 695; New York Central R. R. v. United States, 212 U. S. 481, 497, 29 S. Ct. 304, 53 L. Ed. 613, 623; Holmgren v. United States, 217 U. S. 509, 523, 30 S. Ct. 588, 54 L. Ed. 861, 867, 19 Ann. Cas. 778."

The indictment under consideration contains all the requirements announced in the Lamar Case.

As a subdivision of their specification No. 1, the appellants urge that the court denied "the renewal of their objection to the further interrogatories and testimony following. * * *" This presents no new question, the original objection, covered by the main part of the specification, having been interposed to the introduction of any testimony, on the ground that the indictment was insufficient. We have already disposed of this contention.

Error is assigned to a ruling of the court allowing a Japanese witness to testify as to a certain conversation between appellants and Sonoda, the intended victim of the impersonation, on October 15, 1930, at the residence of Sonoda. The witness, who spoke and understood very little English, was visiting Sonoda on that day and overheard a conversation between appellants and Sonoda, at which one Ito, a Japanese, acted as interpreter. The witness testified that Ito said to Sonoda, in Japanese: "They are demanding money."

Since Ito himself was put on the stand by the government and declared that "Mr. Pirotte asked Mr. Heskett that he come back again and he said he wanted five hundred dollars," the testimony of Hideo Yamaguchi as to what Ito had told Sonoda in Japanese was merely by way of corroboration. As such it was admissible, the objection to it as hearsay not being valid.

Objection is also made to the admission of the testimony of one Kawano, who stated that early in October, 1930, appellant Heskett came to his store with another man and inquired whether the witness was acquainted with a Japanese, whose picture they showed to him, saying that the man was in "trouble for checks." The witness did not know the person for whom they inquired. The man who accompanied Heskett on that visit was not named or identified, but Heskett told the witness that the man was a United States immigration inspector. The witness was then informed that he was in trouble because he had no passport and was unlawfully in the country, but that the United States immigration inspector wanted to "fix up the case." It was then arranged that the witness call that night at Heskett's house, where Heskett demanded $2,000 of the witness to "fix his trouble." The witness did not pay this sum, but the next night he gave Heskett $200 cash and a note for $600.

It was stipulated at the trial that this testimony was competent against Heskett alone and should not be considered as evidence against appellant Pirotte, and the court so instructed the jury. It is now contended that this evidence was inadmissible to show a conspiracy, as charged in the first count, on the part of either appellant, because it does not relate to the matter or offense alleged in the indictment. But the testimony did relate to an offense similar to that charged, and was admissible for the purpose of showing the intent of Heskett when he visited Sonoda's residence and represented himself and Pirotte as immigration officers. As said by this court in Jones v. United States, supra, 162 F. 417, at pages 427, 428:

"The indictment in the present case charged the defendants thereto with conspiring to defraud the government of lands embraced by homestead claims filed, respectively, by certain named persons, and as tending to support the alleged conspiracy the government was permitted on the trial to show that various other persons had also filed

upon and made final proof of various other tracts of land under the homestead laws, in pursuance of an agreement with the defendants and for their benefit. That there was no error in admitting such testimony was decided by this court in the case of Van Gesner v. U. S., 153 F. 46, 82 C. C. A. 180, and by the Supreme Court in Williamson v. U. S., 207 U. S. 425, 28 S. Ct. 163, 52 L. Ed. 278. Such collateral matter was admitted, as the trial court distinctly instructed the jury, as tending to establish guilty intent, purpose, design, or knowledge, and could only be so considered in connection with the charge against the defendants.

"In Wood v. U. S., 16 Pet. 358, 10 L. Ed. 987, Mr. Justice Story, speaking for the court, said:

" 'Where the intent of the party is matter in issue, it has always been deemed allowable, as well in criminal as in civil cases, to introduce evidence of other acts and doings of the party, of a kindred character, in order to illustrate or establish his intent or motive in the particular act directly in judgment. Indeed, in no other way would it be practicable in many cases to establish such intent or motive; for a single act, taken by itself, may not be decisive either way, but, when taken in connection with others of a like character and nature, the intent and motive may be demonstrated almost with a conclusive certainty.' "

During the trial, objection was made to a certain question put to the appellant Heskett by the attorney for the government on the ground that the interrogation was immaterial. In overruling the objection the court said: "The defendant is on trial for falsely representing himself as an immigration officer for profit. According to the evidence of the government it shows that he went out and attempted to extort, to obtain money from Toyoki Sonoda, that he also attempted to from Yamaguchi."

This statement of the court is now assigned as error, although no objection was made at the time. However, in view of the following statement of the court in its instructions to the jury, the error, if any, was cured: "The jury are the exclusive judges of the facts, while the court may, if it sees fit, discuss them with you; it may even indicate his belief or disbelief of the evidence; it may even express his opinion as to the guilt or innocence of the defendant; that is not binding upon you, you are to understand, because to you is committed the sole duty of passing upon the facts."

It is clear that the court was not here attempting to invade the province of the jury. Not only was the charge, as quoted above, entirely clear as to the jury's duty in the matter, but the remark itself was qualified by the phrase, "according to the evidence of the Government."

In the course of the trial, during an argument between counsel over an objection, the attorney for the government remarked, "I don't think counsel wants to get the facts; trying to hide the facts." An objection to this statement was overruled, and the ruling is now assigned as prejudicial error. No request was made that the statement be withdrawn or that the jury be instructed to disregard it. This situation would seem to come within the rule announced by this court in Southern Pacific Co. v. Marquez, 44 F.(2d) 286, 288, in which the following language was used by the late Judge Rudkin: "During the course of the closing argument for the appellee, counsel for appellant said: 'I object to those remarks as prejudicial, "maiming children and killing men," and ask that they be made a part of the record.' To this the court replied: 'Very well, let the record show that you have the exception.' The rule is well settled that an exception to the argument of counsel, without more, does not raise any question for review either in the trial or appellate court. McDonough v. United States (C. C. A.) 299 F. 30, 38; Vendetti v. United States (C. C. A.) 27 F.(2d) 856, 858."

In Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc. (C. C. A. 2) 32 F.(2d) 195, 199, certiorari denied 280 U. S. 579, 50 S. Ct. 32, 74 L. Ed. 629, the court said: "It is to be noted that appellant requested no action by the court, but merely registered an exception when the court overruled his protest. This is not the proper way to preserve the point that opposing counsel has made an improper remark to the jury. Brooklyn Heights R. R. Co. v. Ploxin, 294 F. 68, 70 (C. C. A. 2); Devine v. Chicago, M. & St. Paul Ry. Co., 194 F. 861 (C. C. A. 7)." See, also, Bradshaw v. United States (C. C. A. 9) 15 F.(2d) 970, 972.

In any event, we do not believe that the District Attorney's remark was reversible error.

The next assignment of error relates to the sufficiency of the evidence to support the verdict. The argument in support of this assignment is to the effect that the evidence offered by the government shows at the most an impersonation by the appellants of state

immigration officers, but not an impersonation of federal immigration officers, and that therefore the motion for a directed verdict made at the close of the government's case should have been granted.

■ It does not appear, however, that the motion was renewed at the close of the entire presentation of evidence, and therefore, as has been unanimously held by the courts, the motion is presumed to have been waived.

In Union Pacific Railway Co. v. Daniels, 152 U. S. 684, 687, 688, 14 S. Ct. 756, 757, 38 L. Ed. 597, Mr. Chief Justice Fuller said: "At the close of the plaintiff's evidence, the defendant moved to dismiss the complaint, which motion was denied, and defendant excepted. Thereupon the defendant proceeded with its case, and adduced evidence on its part. This waived the exception, and the action of the court in overruling the motion to dismiss cannot be assigned for error. [Columbia & Puget Sound] Railroad Co. v. Hawthorne, 144 U. S. 202, 12 S. Ct. 591 [36 L. Ed. 405]; Brown v. Southern Pac. Co., 7 Utah, 288, 291, 26 P. 579."

In Sharples Separator Co. v. Skinner, 251 F. 25, 27, the late Judge Gilbert, of this court, said: "The defendant at the close of the testimony having made no motion for an instructed verdict, on the ground of the insufficiency of the evidence to sustain a verdict against it, we are precluded from considering any questions other than. the rulings of the trial court in excluding or admitting evidence, and in giving or refusing instructions to the jury." See, also, Northern Pacific Railroad Co. v. Mares, 123 U. S. 710, 713, 8 S. Ct. 321, 31 L. Ed. 296; Runkle v. Burnham, 153 U. S. 216, 222, 14 S. Ct. 837, 38 L. Ed. 694; Hansen v. Boyd, 161 U. S. 397, 403, 16 S. Ct. 571, 40 L. Ed. 746; Lucas v. United States (C. C. A. 8) 15 F.(2d) 32; Havener v. United States (C. C. A. 8) 15 F.(2d) 503, 507; Wishart v. United States (C. C. A. 8) 29 F.(2d) 103, 104; United States v. Rice (C. C. A. 9) 47 F.(2d) 749, 750.

■ Viewing the contention on its merits, however, we find that the testimony does not disclose that appellants expressly or orally represented themselves to Sonoda as United States immigration officers; and the badges they displayed were a police badge and a deputy sheriff badge. But, without reviewing the evidence, it is sufficient to say that there is ample testimony to show that they intentionally represented themselves as immigration officers, with authority to inquire as to whether their intended victim was in possession of a passport. By their words and actions, therefore, they held themselves out as acting under the authority of the United States, and in such falsely assumed capacity attempted to extort money from their victim. Inasmuch as the federal government has exclusive jurisdiction over the question of passports, it was not necessary that they expressly represent themselves as "United States" immigration officers. The testimony is ample to support the finding of the jury on this issue, which was clearly explained by the following instruction: "In order to find that the defendants or either of them represented themselves to be United States Immigration Officers, it is necessary that you find that they expressly claimed themselves to be such. If the defendants intentionally led the parties with whom they were dealing to believe that they were such officers and if such persons met this belief, this will justify a finding that they represented themselves to be such officers, a finding that they represented themselves as such unless you further find that this belief was the result of the intentional act on the part of the defendants, such acts as were reasonably calculated to give rise to the belief * * * that they were immigration officers."

■ The foregoing observations, it is hardly necessary to add, are applicable only to the second count. As to the first, or conspiracy count, the question of whether or not the appellants actually represented themselves as United States officers is not material. To sustain the conspiracy count, it was necessary for the government to prove only that the accused entered into an agreement so to represent themselves, and that, in furtherance of that agreement, they committed one of the overt acts charged in the indictment. As we have seen, it was not essential that such overt act be of itself unlawful, provided that it was in furtherance of the conspiracy.

■ As we study the entire record, we find that there was ample evidence to sustain the verdict against the two appellants. It is clear that they endeavored to impose upon the ignorance and credulity of Japanese aliens for the purpose of extorting money from them. We believe that substantial justice has been done, "without regard," in the language of the Judicial Code, "to technical errors, defects, or exceptions which do not affect the substantial rights of the parties." Section 269 (28 USCA § 391).

The judgment is affirmed as to both appellants.