George **HERMAN**

v.

**UNITED STATES** of America.

No. 18012.

United States Court of Appeals
Fifth Circuit.

April 12, 1961.

Rehearing Denied June 21, 1961.

Irving M. Wolff, Miami, Fla., for appellant.

Robert W. Rust, Asst. U. S. Atty., E. Coleman Madsen, U. S. Atty., Miami, Fla., for appellee.

Before TUTTLE, Chief Judge, and RIVES and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

The appellant, George Herman, questions the fairness of the trial below, as well as the adequacy of the government's proof to establish the elements essential for conviction.

May 18 or May 19, 1958, Jack Heffron, president and director of Norelle Jewelry Company, went to the Union Station at St. Louis, Missouri, to start on a sales trip. He had with him a salesman's jewelry case containing various samples of rings and mountings. He gave the case to a porter. The porter placed it on a hand truck. Heffron walked to one of the ticket windows to buy a ticket. He turned his head. In that instant the case disappeared. Heffron, the porter, the railroad police, and the St. Louis police began a search. They found no sample jewelry case.

May 20, 1958, at 1:30 a. m., George Herman and Howard Selander checked into the Mar-Jes Motel in West Memphis, Arkansas. This motel, about 300 miles from St. Louis, is on United States Highway 61, the main artery leading from St. Louis, Missouri, to Memphis, Tennessee. About nine o'clock that morning Herman and Selander went to the Railway Express Agency in Memphis. Using the name "Ben Cohen," Herman told one of the Express Agency employees that he wished to send a sample jewelry case to the Cut Rate Gift Shop in Fort Lauderdale, Florida. (The Government's Exhibit #1 was identified as the sample case Herman sent—and as Heffron's missing sample case.) At the trial, the Agency employee identified both Herman and Selander. He testified that Herman made out address tags as requested, and that Herman said that the case contained jewelry valued at $150. When the agent informed Herman that because the value exceeded $50 the Money Department of the Agency would have to handle the shipment, Herman replied that the value actually was no more than $50, since the jewelry was costume jewelry only. The agents made out delivery receipts and attached seals to the case, using identical numbers on the delivery receipts and seals, as is customary. The agent in charge of the Money Department stated, from his record, that the jewelry case left Memphis the same day, headed for Fort Lauderdale on board the St. Louis San Francisco train No. 105 at 10:30 a. m.

A special agent of the F.B.I. recognized Herman and Selander when he saw them standing on a street in Memphis about a mile away from the Railway Express Station. One hour later, and 75 miles away, they were arrested for speeding.

At the time of shipment, Herman appeared to have a full head of hair. A few hours later, after his arrest by the Mississippi Highway Patrol for speeding, he flushed a wig down the toilet in the Union County jail in New Albany, Mississippi. Witnesses testified that when they saw Herman in the Railway Express Office he had a full head of hair; but when they saw him later the same day, he was bald.

May 23, 1958, a Railway Express Agency employee in Fort Lauderdale, Florida, delivered the sample case to the Cut Rate Gift Shop. Oscar Slofsky initialed the delivery receipt, or waybill, and accepted the sample case. The seals

were intact when Slofsky received the case, and the seal numbers tallied with the numbers recorded on the waybill. That same day, at the request of the F.B.I., Heffron identified this sample case and its contents as the property he had lost in Union Station.

Count one of the indictment charges George Herman and Howard Selander with wilfully causing the jewelry case to be transported in interstate commerce, in violation of 18 U.S.C.A. § 2314.[1] Count two charges Oscar Slofsky and Jack Rapaport, co-owners of the Cut Rate Gift Shop, with receiving goods shipped in interstate commerce knowing them to have been stolen, in violation of 18 U.S.C.A. § 2315.[2] Count three charges Herman, Selander, Slofsky, and Rapaport with conspiracy to violate 18 U.S.C.A. § 2314 and § 2315, in violation of 18 U.S.C.A. § 371. The conspiracy count alleges two overt acts: (1) Herman and Selander met and conferred in Memphis, May 20, 1958, and (2) Slofsky and Rapaport received the jeweler's case from Memphis, May 23, 1958.

The case was tried before Judge William C. Mathes, United States District Judge, Southern District of California, then assigned to the Southern District of Florida. Judge Mathes struck the first overt act from the indictment on his own motion. Selander pleaded guilty to counts one and three of the indictment. Neither the government nor the defendants called him to testify. The jury acquitted Slofsky and Rapaport, with respect to counts two and three. Herman, however, was found guilty of counts one and three.

### I.

Herman contends, first, that he did not receive a fair and impartial trial. He asserts that the trial judge unnecessarily and persistently cross-examined the witnesses and interfered with the progress of the trial, to the advantage of the government and in deprivation of the defendant's rights.

A trial judge "should never assume the role of prosecuting attorney and lend the weight of his great influence to the side of the government." Hunter v. United States, 5 Cir., 1932, 62 F.2d 217, 220. In our system of administering justice the functions of the trial judge and the prosecuting attorney are separate and distinct; they must not be confused. The trial judge has a duty to conduct the trial carefully, patiently, and impartially. He must be above even the appearance of being partial to the prosecution. Blumberg v. United States, 5 Cir., 1955, 222 F.2d 496, 501; Zebouni v. United States, 5 Cir., 1955, 226 F.2d 826.

Granted this, the record fails to support Herman's charges. The trial judge did break into the examination of witnesses with questions of his own and he did examine some of the witnesses at length. This is proper enough, within the exercise of a reasonable discretion. We find that the trial judge asked defendant's witnesses relatively few questions. Almost all of his questions were directed to the government's witnesses, and these were primarily aimed at a jurisdictional matter—the determination of the qualifications of the jewelry experts and the value of the jewelry sample case. We do not approve of a trial judge

1. "Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; * * * Shall be fined not more than $10,000 or imprisoned not more than ten years, or both. * * * *" 18 U.S.C.A. § 2314.

2. "Whoever receives, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more, or pledges or accepts as security for a loan any goods, wares, or merchandise, or securities, of the value of $500 or more, moving as, or which are a part of, or which constitute interstate or foreign commerce, knowing the same to have been stolen, unlawfully converted, or taken; * * * Shall be fined not more than $10,000 or imprisoned not more than ten years, or both. * * * *" 18 U.S.C.A. § 2315.

asking so many questions that he appears to take the case away from the attorney, but here we cannot say that he was more interested in one side of the case than he was in the other or that he was unfair to the defendant.

■ The record shows that the trial judge reprimanded the defense counsel. He also reprimanded the prosecutor. The record fails to indicate any bias or prejudice in either set of reprimands.

■ Herman attacks the exoneration of the defendants' bail during the course of the trial. This took place outside the jury's presence. The trial judge stated to counsel that the exoneration had nothing to do with the jury or the conduct of counsel. It was within his discretionary power to exonerate the bail as he did. Rule 46, Fed.R.Crim.P., 18 U.S.C.A.

To our minds, the record as a whole indicates that the trial judge participated in one way or another more actively than is customary, but with no bias or prejudice toward either side that would render the proceedings unfair. What may be customary in one district or circuit, of course, may not be customary in another district or circuit. Here if anyone was badgered—we do not say that anyone was—it was the United States attorney.

## II.

To constitute a violation of 18 U.S.C.A. § 2314, the "value" of the items transported must be $5,000 or more. The "value" as defined in 18 U.S.C.A. § 2311, means "the face, par, or market value, whichever is the greatest, and the aggregate value of all goods, wares, and merchandise, securities, and money re-

ferred to in a single indictment shall constitute the value thereof." Two experts testified for the prosecution that the market value of the jewelry in the sample case exceeded $5,000. The defendants presented witnesses who testified that the market value was $4,800 and $4,408.94, *without any mark-up*. Herman contends that the government's witnesses employed the wrong test or formula in arriving at their value.

■ The standard test for determining market value of stolen property is the price a willing buyer would pay a willing seller at the time and place the property was stolen. "[M]ere cost of production, cost of replacement, value to the owner, value to one who might have use of it under certain circumstances, whatever else it might be, is not market value. For that value—market—depends on a market, whether formal or informal, in which willing buyers bargain with willing sellers." Abbott v. United States, 5 Cir., 1956, 239 F.2d 310, 313. The government's experts computed the value of the goods as cost of production plus mark-up, while the defense witnesses computed their value as cost of production alone. General retail value would naturally include a reasonable mark-up, and evidence as to retail value of the goods is properly admissible.[3] Gordon v. United States, 6 Cir., 1947, 164 F.2d 855; Husten v. United States, 8 Cir., 1938, 95 F.2d 168.

■ We read the language "aggregate value of all goods" as contemplating the sum of the values of the individual articles, and not the lump sum value of all the articles as a single whole. The

3. "It is uniformly held that the value of the stolen property is the market value at the time and place of taking if it has a market value. People v. Gilbert, 163 Mich. 511, 128 N.W. 756, Ann.Cas.1912A, 894; Robinson v. State, 107 Neb. 591, 186 N.W. 977; Cunningham v. State, 90 Tex.Cr.R. 500, 236 S.W. 89; 17 Ruling Case Law 66, § 71; 36 Corpus Juris 883. The trial court charged that, in the present case, that would be the retail market value. These rings were of the same character and quality as those sold to jewelers upon them as samples. Mr. Kraus dealt with the retail trade, which bought his rings for the purpose of sale at retail. They had an individual retail market value, and the entire lot were susceptible of valuation as such. In such case the retail value should prevail over the wholesale or replacement value, and there is here presented no situation which would warrant consideration of the value at wholesale or for replacement. * * *" *Husten v. United States, 8 Cir., 1938, 95 F.2d 168, 171.*

government experts, therefore, properly computed the unit value (cost of production plus mark-up) and multiplied by 900 rather than estimating the market value for 900 rings in one sale. Substantial evidence shows that the jewelry case and jewelry contained in it were worth more than $5,000.

### III.

The defendant contends that the government did not meet its burden, under 18 U.S.C.A. § 2314, of proving beyond a reasonable doubt that he *knew* the goods were stolen. We find that the jury could have inferred guilty knowledge from his checking into the motel under an assumed name, shortly after the case was stolen; the circumstances connected with his shipping the case from Memphis, especially his changing the stated value of the bag's contents after the clerk's questions; and, of course, flushing his wig down the toilet after his arrest later that day. Unexplained possession of the fruits of the crime, shortly after its commission, justifies the inference that the possession is guilty possession. Such evidence is no more than prima facie evidence of guilt, but it may control if it is not explained by circumstances consistent with innocence. See Barfield v. United States, 5 Cir., 1956, 229 F.2d 936; Husten v. United States, 8 Cir., 1938, 95 F.2d 168. We find no such justifying circumstances here.

There is no problem here of instructions improperly placing the burden of proving his innocence on the possessor of recently stolen goods. See United States v. Allegrucci, 3 Cir., 1958, 258 F.2d 70. The district court carefully instructed the jury that "possession of property recently stolen not satisfactorily explained is a circumstance from which the jury may reasonably draw the inference and find that the person in possession knew the property had been stolen. The same inference may reasonably be drawn from a false explanation of such possession. Possession in one state of property recently stolen in another state, if not satisfactorily explained, is a circumstance [from] which the jury might reasonably infer and find in the light of surrounding circumstances that the person in possession knew it to be stolen property." This is a fair and lucid statement of the law. Bollenbach v. United States, 1946, 326 U.S. 607, 616, 66 S.Ct. 402, 90 L.Ed. 350.

Herman argues that the district court compounded confusion by failing to distinguish between a presumption and an inference in instructing the jury that a "presumption is an inference which the law requires a jury to make from particular facts in the absence of convincing facts." With regard to the delivery of the jewelry sample case from Memphis to Fort Lauderdale by the Railway Express Agency, the trial judge instructed the jury that there is a presumption "that the ordinary course of business has been followed, that things have happened according to the ordinary course of nature and the ordinary habits of life and that the law has been obeyed." The distinction between a presumption as a mandatory deduction, and an inference as a permissible deduction, seems clearly to have been made in the trial judge's definition and in his statements to the jury.

### IV.

There is merit to the defendant's contention that no overt act was proved to support his conviction of a conspiracy under count three.

To complete the crime of conspiracy at least one of the conspirators must be charged with the performance of at least one overt act in furtherance of the conspiracy. Schnautz v. United States, 5 Cir., 1959, 263 F.2d 525; Pinkerton v. United States, 5 Cir., 1945, 151 F.2d 499, 501, affirmed 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489. See United States v. Falcone, 1940, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128; Rent v. United States, 5 Cir., 1954, 209 F.2d 893. In this case two overt acts were originally charged. The first overt act was the meeting of Herman and Selander in Memphis, Tennessee. The second overt

act was the receipt of the jeweler's case by Slofsky and Rapaport in Fort Lauderdale. Because the meeting of Herman and Selander in Memphis occurred outside the trial court's district and outside the district of the grand jury that returned the indictment, the trial judge instructed the jury during the course of the trial that even if they found that the meeting took place they nevertheless "may not consider that as satisfying the overt act requirement." But he told them that they could consider the meeting in Memphis to determine whether a conspiracy was formed, and if so, who were members of it, although the act itself could not satisfy the requirements to complete the crime of conspiracy. This instruction is entirely proper. Crosby v. United States, 5 Cir., 1956, 231 F.2d 679, certiorari denied 352 U.S. 831, 77 S.Ct. 46, 1 L.Ed.2d 52, rehearing denied 352 U.S. 955, 77 S.Ct. 322, 1 L.Ed. 2d 245; United States ex rel. Kranz v. Humphrey, 3 Cir., 1949, 174 F.2d 741, certiorari denied 337 U.S. 948, 69 S.Ct. 1508, 93 L.Ed. 1750; Woitte v. United States, 9 Cir., 1927, 19 F.2d 506, certiorari denied 1927, 275 U.S. 545, 48 S.Ct. 84, 72 L.Ed. 417; United States v. Baker, D.C.R.I.1917, 243 F. 741.

■■■■ Thus, after the trial judge expunged the meeting in Memphis as an overt act, the sole overt act left to support the conspiracy was the alleged receipt by Slofsky and Rapaport of the jeweler's case sent from Memphis. The rub comes in the acquittal of Slofsky and Rapaport. There was only one overt act to support count three. Slofsky and Rapaport were the only persons charged in that overt act. They were acquitted. Consequently, so Herman argues, no overt act was proved to support the conspiracy conviction. But the verdict of the jury does not mean that the overt act did not occur; it means merely that the jury did not find Slofsky and Rapaport guilty of the commission of an offense. Such a finding does not make the act itself disappear.[4] Even though the facts do not disappear, an essential element for conviction of conspiracy *has* disappeared: the necessity that the overt act be performed *by one of the conspirators*. A conspiracy cannot be committed by a single individual acting alone; he must act in concert with at least one other person. The acquittal of one conspirator would thus be immaterial where there are several other named conspirators, or other conspirators charged but unknown to the jury. But where all but one of the charged conspirators are acquitted, the verdict against the one will not stand. See 11 Am.Jur. Conspiracy § 26. Similarly, where the substantive offense is the overt act supporting conviction on the conspiracy count, an acquittal of the substantive offense operates as an acquittal of the conspiracy count, if the acquittal of the substantive offense constitutes a determination that the overt act was not committed. In re Johnston, 3 Cal.2d 32, 43 P.2d 541;

4. The error in Herman's reasoning is his failure to recognize that the overt act in support of a conspiracy need not be unlawful itself. It may be a completely innocent act. Poliafico v. United States, 6 Cir., 1956, 237 F.2d 97, certiorari denied 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597, rehearing denied 353 U.S. 931, 77 S. Ct. 718, 1 L.Ed.2d 725; United States v. Stromberg, D.C.N.Y.1957, 22 F.R.D. 513. Furthermore the verdicts were returned by the same jury after a single trial in which all of the defendants were tried together. Had these been separate and subsequent trials the doctrine of res judicata might be applicable. Yawn v. United States, 5 Cir., 1957, 244 F.2d 235; Sealfon v. United States, 1948, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180. But where the same jury returns both verdicts in a single trial, the facts determined by an acquittal of one party do not preclude conviction of another party based on the same facts. United States v. Marcone, 2 Cir., 1960, 275 F.2d 205; Schaefer v. United States, 8 Cir., 1959, 265 F.2d 750. See United States v. Coplon, 2 Cir., 1950, 185 F.2d 629, 28 A.L.R. 2d 1041; United States v. Austin Bagley Corp., 2 Cir., 1928, 31 F.2d 229, certiorari denied, 1929, 279 U.S. 863, 49 S. Ct. 479, 73 L.Ed. 1002; Annotation 92 L. Ed. 185. Cf. Dunn v. United States, 1932, 284 U.S. 390, 52 S.Ct. 189, 76 L. Ed. 356. We recognize the rule, but do not reach that question here.

Oliver v. Superior Court, 92 Cal.App. 94, 267 P. 764. But where the acquittal of the substantive offense does not necessarily constitute a determination that the overt act was not committed the acquittal does not preclude a conviction on the conspiracy count. Rothman v. United States, 2 Cir., 1920, 270 F. 31, certiorari denied 254 U.S. 652, 41 S.Ct. 149, 65 L. Ed. 458; Allen v. United States, 4 Cir., 1937, 89 F.2d 954. In this case the jury decided that Slofsky and Rapaport were not conspirators. That finding erased the slate of any overt act performed by a conspirator. Consequently count three falls for failure to prove an overt act— performed by a conspirator—to support the conspiracy.

Herman was sentenced to nine years' imprisonment as to count one, the substantive crime, and to five years' imprisonment as to count three, the conspiracy, with the sentences commencing and running concurrently. Since the sentences run concurrently, our reversal of the conviction of conspiracy in no way affects the sentence of nine years' imprisonment imposed for conviction of the substantive crime. Benham v. United States, 5 Cir., 1954, 215 F.2d 472. See Blitz v. United States, 1894, 153 U.S. 308, 14 S.Ct. 924, 38 L.Ed. 725. Cf. De-Jianne v. United States, 3 Cir., 1922, 282 F. 737, 742.

### V.

■ Notwithstanding our holding on the conspiracy charge, we have no authority to reduce or to strike the $10,000 fine. Under 28 U.S.C.A. § 2106 an appellate court may "affirm, modify, vacate, set aside or reverse any judgment * * * and may remand the cause and direct the entry of such appropriate judg-ment", but the appellate court has no authority to modify a sentence that is within the limits allowed by the applicable statute. Smith v. United States, 10 Cir., 1959, 273 F.2d 462, certiorari denied 363 U.S. 846, 80 S.Ct. 1619, 4 L.Ed.2d 1729; United States v. Kapsalis, 7 Cir., 1954, 214 F.2d 677, certiorari denied, Robinson v. United States, 349 U.S. 906, 75 S.Ct. 583, 99 L.Ed. 1242. The nature of the sentence rests in the discretion of the court below, and is not reversible by this Court where the punishment assessed is within the statutory limits. Freeman v. United States, 9 Cir., 1917, 243 F. 353, 357. Since the trial judge did not impose a separate fine for each count, we must hold that the single fine is referable to the conviction on the substantive offense, which carries a maximum fine of $10,000, 18 U.S.C.A. § 2314. "[T]he presumption of law is that the court awarded sentence on the good count only." [5]

### VI.

■ We have examined the instructions of the judge. We do not find them overbearing and confusing and conflicting, as Herman contends. Nor do we find them misleading as to the government's burden of proof. We have considered all of the appellant's contentions, whether discussed in this opinion or not, and have concluded that, except as discussed, there was no prejudicial error in the proceedings below. We hold that the trial was fairly and impartially conducted, and the evidence of guilt to support count one was substantial. Thus, the judgment of conviction as to count one is affirmed. The judgment of conviction as to count three is reversed.

Judgment affirmed in part and reversed in part.

5. Claassen v. United States, 1891, 142 U.S. 140, 147, 12 S.Ct. 169, 170, 35 L.Ed. 966. See Pinkerton v. United States, 1946, 328 U.S. 640, 641, 642 note 1, 66 S.Ct. 1180, 90 L.Ed. 1489; Kiyoshi Hirabayashi v. United States, 1943, 320 U.S. 81, 63 S. Ct. 1375, 87 L.Ed. 1774; Abrams v. United States, 1919, 250 U.S. 616, 619, 40 S.Ct. 17, 63 L.Ed. 1173; Reese v. United States, 6 Cir., 1926, 14 F.2d 606, certiorari denied 273 U.S. 739, 47 S.Ct. 333, 71 L.Ed. 867.