UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert FUIMAN, Defendant-Appellant.

No. 75–4063.

United States Court of Appeals,
Fifth Circuit.

Feb. 10, 1977.

**1156**

Milton E. Grusmark, Miami, Fla., Louis M. Natali, Jr., Mark A. Lublin, Philadelphia, Pa., for defendant-appellant.

Robert W. Rust, U. S. Atty., Donald L. Ferguson, James E. McDonald, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, and TUT-TLE and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

## I

This case arises out of an apparent conspiracy to import several controlled substances into the United States. In September 1974, two men flew a plane to Colombia and returned several days later. Upon their return, they landed in Hendry County, Florida, where they were arrested. A search of their plane revealed that it was carrying about six pounds of cocaine, 578 pounds of marijuana, and 15 pounds of hashish.

Eventually, five men were indicted in connection with these events.[1] The appellant Fuiman was one of the five. Fuiman's alleged connection with the conspiracy was financial in nature—the government's case was that Fuiman had bankrolled at least part of the transaction. He apparently was never directly involved with the mechanics of the operation. In fact, all of Fuiman's alleged activities which connect him with the transaction took place in Philadelphia, Pennsylvania.

Fuiman was tried separately from the other defendants in West Palm Beach, Florida, in early October 1975. The government's case-in-chief was based upon the testimony of three witnesses, all of whom were in some way connected with the smuggling operation. The key witness was one Harkness, who was one of the two men arrested at the time the plane was initially seized. Harkness testified that he had met with Fuiman in Philadelphia several times over the summer of 1974, and that Fuiman had eventually given him—either directly or through a go-between named Coolbaugh—a sum of money totalling about $20,000. This was Fuiman's sole connection with the operation. Moreover, it became apparent during the government's case that there was no evidence to connect Fuiman with the marijuana and hashish smuggling—that is, that Fuiman was at most involved with the cocaine aspect of the deal. Accordingly, the district judge directed (upon timely motion) a judgment of acquittal as to those portions of the indictment dealing with marijuana and hashish, so that the charges relating to cocaine were the only ones remaining when Fuiman's defense began.

Fuiman's defense consisted of testimony from several character witnesses and from Fuiman himself, who categorically denied

---

1. The five-count indictment alleged that all five men had committed the following offenses:

    Count I—Conspiracy to import cocaine, marijuana and hashish. 21 U.S.C. §§ 963, 952(a).
    Count II—Importation of cocaine. 21 U.S.C. §§ 952(a), 960(a)(1).
    Count III—Importation of marijuana and hashish. 21 U.S.C. §§ 952(a), 960.
    Count IV—Possession of cocaine with intent to distribute. 21 U.S.C. § 841(a)(1).

    Count V—Possession of marijuana and hashish with intent to distribute. 21 U.S.C. § 841(a)(1).
    Additionally, Counts II–V charged each of the five men with aiding and abetting the commission of the substantive offenses in violation of 18 U.S.C. § 2.

any involvement in the operation. After closing argument, the jury was charged and retired to deliberate late in the afternoon. They deliberated for about an hour and a half, went home, and reconvened at 9:00 the next morning. After a while, the jury sent a note to the judge which read as follows:

> The jury respectfully requests a reading of Title 21, Section 952(a)(1).
>
> Art Markusan, Forman [*sic*]
>
> P.S. We feel that defendant Fuiman was guilty of financing the conspiracy but may not have known about the cocaine. How do you suggest we resolve this.

In response to the note, the court read the requested statute twice to the jury. After the reading of the statute, the jury foreman asked the court to read Schedule II, Subchapter II (the schedule of controlled substances referred to in the statute). The court did not do that, but did tell the jury that cocaine was a controlled substance within the meaning of the statute.

The jury again retired to deliberate. After a brief period of further discussion by counsel, the judge again recalled the jury in an effort to clear up possible confusion about the court's dismissal of the marijuana and hashish charges. The court explained the indictment to the jury—that it charged Fuiman with conspiring "knowingly and willfully to commit an offense against the laws of the United States"—and explained that the offense in question was the violation of the statute which the court had read to the jury a few moments before. The jury then retired once again.

About forty minutes later, the jury returned with its verdict. It found Fuiman guilty of Count I of the indictment (conspiracy) and not guilty of the remaining counts (aiding and abetting the importation of cocaine, and aiding and abetting the possession of cocaine with intent to deliver). Thus, the final result as to each count of the indictment was this:

| | | |
|---|---|---|
| Guilty | Count I | Conspiracy to import cocaine.[2] |
| Not Guilty | Count II | Aiding and abetting the importation of cocaine. |
| Dismissed | Count III | Aiding and abetting the importation of marijuana and hashish. |
| Not Guilty | Count IV | Aiding and abetting the possession of cocaine with intent to distribute. |
| Dismissed | Count V | Aiding and abetting the possession of marijuana and hashish with intent to distribute. |

Ultimately, Fuiman was sentenced to four years for the conspiracy charge, with three years' special probation.

On this appeal, Fuiman argues (1) that the jury's verdict was fatally inconsistent, and should have been set aside, and (2) that the district judge's supplemental charge to the jury was reversibly deficient because (a) the charge was not sufficiently clear, and (b) the charge was not sufficiently even-handed because it did not contain an explicit instruction on the defendant's presumption of innocence and on the meaning of "reasonable doubt." For the reasons set forth below, we find neither of these arguments persuasive and affirm the conviction.

## II

With respect to the inconsistency of the jury's verdict, it is well established that inconsistent verdicts on a multi-count indictment do not *per se* invalidate a jury's findings. As Mr. Justice Holmes wrote in *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932), "[c]onsistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment." Thus, as a general proposition, if a jury has convicted a defendant on one count of an indictment, and the government has adduced evidence legally sufficient to convict the defendant on that count, then whatever the jury did with the remaining counts is immaterial to

---

**2.** Although this count of the indictment had originally charged a conspiracy to import marijuana and hashish as well as cocaine, the dis-

trict judge had already directed a verdict of acquittal on all marijuana and hashish offenses. Tr. at 181–82.

the appellate inquiry. And this is no less true in a situation where there is a logical inconsistency when the jury's findings on all the counts of the indictment are considered as a whole. *See, e. g., United States v. Stiglets*, 463 F.2d 242 (5th Cir. 1972).

In this case, however, Fuiman's argument seems to center on the "overt act" requirement of the federal conspiracy statutes. Fuiman argues that "[t]he only overt act alleged in the indictment connecting [Fuiman] to the conspiracy and the substantive counts was Overt Act 1 of Count I . . . ." [3] The overt act he mentions was the alleged meeting between Fuiman and two other men in Philadelphia, at which meeting Fuiman allegedly provided money for the scheme. Fuiman argues that the jury's acquittal of him on the importation and possession with intent to distribute counts necessarily implies that the jury felt that no such meeting took place. Thus, he argues, the conspiracy conviction must fail because there was no overt act to support the conspiracy.

■■■ Fuiman's argument misconstrues the overt act element of the conspiracy statute. To convict Fuiman of the conspiracy, the government did not have to show that Fuiman himself committed some overt act. All the government needed to show was that at least one conspirator committed at least one overt act in furtherance of the conspiracy. *See, e. g., Braverman v. United States*, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942); *United States v. Fontenot*, 483 F.2d 315 (5th Cir. 1973). At Fuiman's trial, the government adduced evidence of a number of overt acts committed by various conspirators, including the actual importation of the cocaine via airplane from Colombia. Thus, even if Fuiman himself had not committed any overt act in furtherance of the conspiracy, that fact would not in itself preclude his culpability under the conspiracy statute.

Fuiman contends, however, that *Herman v. United States*, 289 F.2d 362 (5th Cir. 1961), dictates a contrary conclusion. In our view, Fuiman's reliance on *Herman* is misplaced. In that case, a panel of this court reversed a defendant's conspiracy conviction while affirming his conviction of a substantive offense. The defendant, Herman, had been convicted of transporting stolen goods in interstate commerce and of conspiring with two other men, Slofsky and Rapaport, to transport the stolen goods. The only overt act alleged by the government to support the conspiracy was the receipt of the stolen goods by Slofsky and Rapaport. Slofsky and Rapaport, however, were acquitted of receiving the stolen goods. Thus, this court reversed Herman's conspiracy conviction because there were no remaining conspirators besides Herman himself.

Fuiman's chief reliance is placed upon a passage of the *Herman* opinion in which Judge Wisdom writes that

> where the substantive offense is the overt act supporting conviction on the conspiracy count, an acquittal of the substantive offense operates as an acquittal of the conspiracy count, if the acquittal of the substantive offense constitutes a determination that the overt act was not committed.

*Id.* at 368. This passage is inapposite to Fuiman's case for two reasons. First, it addresses the situation in which a substantive offense is the *only* overt act which is alleged in support of a conspiracy charge. In Fuiman's case, the substantive cocaine offenses were not the only overt acts alleged to support the conspiracy. Since his acquittal of the substantive cocaine offenses did not constitute a final determination that *no* overt act was committed, the acquittal of the substantive offenses did not operate as an acquittal of the conspiracy count. Second, the passage relied upon by Fuiman did not even remotely address Fuiman's situation, where a defendant is tried under a multi-count indictment alleging a conspiracy offense and various substantive offenses. All that the *Herman* passage purported to deal with was the status of

---

**3.** Appellant's brief at 11.

Slofsky and Rapaport, Herman's alleged co-conspirators. The *Herman* panel had to examine whether these two men could be acquitted of the substantive offense in the case but still be considered conspirators to support Herman's conspiracy conviction. The only overt act alleged to support the *Herman* conspiracy was Slofsky's and Rapaport's receipt of the stolen goods. Thus, by acquitting Slofsky and Rapaport, "the jury decided that [they] were not conspirators." *Id.* at 369. From this fact it necessarily followed that Herman himself could not be convicted of conspiracy, since a one-person conspiracy is both a legal and a logical impossibility.

■ Thus, the *Herman* case is of no real help to Fuiman. He is still confined to the argument that the evidence adduced at trial was insufficient to support his conviction on the conspiracy count. And after a review of the evidence in the light most favorable to the verdict below,[4] we are convinced that there was more than ample evidence to justify the jury's verdict.

### III

Fuiman's second argument for reversal—that the district court's supplemental charge to the jury was reversibly erroneous—centers on the events that transpired after the jury requested that the district judge reread the conspiracy statute. Pursuant to the jury's request, the district judge twice reread the statute to them. The judge expressly refused comment upon the "P.S." to the note, emphasizing to the jury that he could not suggest how they resolve the factual issues in the case. After fairly summarizing the various counts remaining in the indictment, the district

judge added these supplemental instructions:

You will remember that I charged you what is meant by "knowingly" and "Willfully".

In that connection you were charged that an act is done knowingly if it is done voluntarily and intentionally, and if it is not done because of a mistake or accident or through inadvertence of some kind or for any innocent reason, and you will remember that the word "willfully" was defined as an act done voluntarily and intentionally, and with the specific intent to do something that the law forbids, that is to say with bad purpose either to disobey or to disregard the law.

You will also remember what I told you on so many occasions, and that is that the Government must prove these elements, each element of each offense beyond a reasonable doubt, and in determining these issues you will, of course, review in your mind and carefully consider all the evidence that bears on the elements involved.

Tr. at 371. Additionally, the court informed the jury that cocaine was a controlled substance within the meaning of the conspiracy statute. After the jury had once again retired to deliberate, and the court had once again heard argument from counsel,[5] the court recalled the jury and charged them as follows:

THE COURT: After you left the courtroom, Mr. Foreman, and members of the jury, it occurred to the Court that, perhaps, I should call you back and have another word with you.

The reason that the Court sent a copy of the indictment with you to the jury-room is because during the trial the Court

---

4. *See Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

5. The main area of concern expressed during defense counsel's argument to the district court at this juncture was that the jury might have become confused by the dismissal of the marijuana and hashish counts of the indictment. The court pointed out to defense counsel that "they have the indictment and there is no mention of marijuana and hashish in the indict-

ment." Tr. at 374. However, the court agreed to recharge the jury if defense counsel insisted: "If you feel strongly and sincerely that there is some confusion about the marijuana and hashish, Counsel, I am sure that I would honor your reaction and call them back here and charge them on that." Tr. at 375. Subsequently, the court recalled the jury and gave them its second supplemental charge.

entered an order which deleted from the indictment two of the counts which were originally read to you when we were doing the voir dire examination and selecting the jury.

Do you remember?

THE JURY: (Nod in the affirmative)

THE COURT: So that you now have three counts and the first count charges a conspiracy on the part of the defendant, charging that he and others conspired knowingly and willfully to commit an offense against the laws of the United States, and the indictment charges that the offense which constituted the unlawful purpose of the conspiracy was the violation of the statute which I just read to you a moment ago, 952(a).

Count II charges that this defendant unlawfully, intentionally imported into the United States a controlled substance, cocaine, from someplace outside of the United States; and the fourth count charges that this defendant was knowingly and intentionally in possession of cocaine with the intent to distribute it.

Now, that copy of the indictment was sent to you so that it would be available to you. You have those three separate counts to deal with.

It is necessary, as I told you previously, to unanimously reach a unanimous verdict, if you can, with respect to each of those counts.

Mr. Foreman, and members of the jury, you may retire to the juryroom.

Tr. at 378–79. Forty minutes after receiving these instructions, the jury returned its verdict.

Fuiman argues that the court's supplemental charges to the jury, considered in context, were deficient in two respects. First, he argues that the charges were insufficient to clear away jury confusion putatively arising from the dismissal of the marijuana and hashish charges. Second, he argues that the supplemental charges were prejudicially favorable to the government's case to the detriment of his own case. We cannot agree with either of these contentions.

■ First, we narrow Fuiman's complaint as to the "jury confusion" issue to an argument over the first count of the indictment, the count under which Fuiman was convicted. In this connection, Fuiman's contention is that the jury was unclear about the scope of Count I following the trial court's directed verdict of acquittal on the marijuana and hashish charges. Of course, the two separate counts involving marijuana and hashish had been completely severed from the indictment, but Count I, which still remained, had originally recited both marijuana/hashish- and cocaine-related conspiracies. Emphasizing this aspect of the situation confronting the jury, and citing Mr. Justice Frankfurter's widely-quoted directive that a trial court's supplemental jury instructions should be designed to clear away the jury's difficulties "with concrete accuracy,"[6] Fuiman asserts that Count I created a confusion that the trial judge failed to take adequate steps to dispel. We reject this argument because we find the court's supplemental charges both clear and responsive to the jury's inquiry. The court reread the statute as the jury had requested, and explicitly informed the jury that cocaine was a controlled substance within the meaning of the statute. The court never mentioned marijuana and hashish in connection with the conspiracy statute. Additionally, the court in its second supplemental charge reminded the jury that they had a copy of the indictment with them, and the substantive marijuana/hashish counts had already been excised from that indictment. Under these circumstances, we hold that the court's supplemental instructions were sufficiently clear and responsive to the jury's inquiry to fall squarely within the trial court's range of discretion in this area.

In the process of evaluating Fuiman's "jury confusion" argument, we are especially aware of the importance of viewing the record as a whole in order to discern the potential sources of the jury's alleged misconception of the case. Of course, such an

---

**6.** *Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 90 L.Ed. 350 (1946).

inquiry is necessary in a case such as this because it is only through a consideration of what might have misled a jury that we may accurately judge the adequacy of a trial court's response to that jury's inquiries. In Fuiman's case, the record discloses that the existence of any jury misapprehensions arising out of the status of the marijuana/hashish charges is well nigh inconceivable. The court indicated to the jury that the cocaine-related offenses were the only offenses left for them to consider in at least three instances: at the close of the government's case;[7] in the original instructions to the jury;[8] and in the second set of supplemental instructions.[9] Considered in the light of the whole record, then, Fuiman's first complaint with the court's supplemental charges is meritless.

Fuiman's second complaint is that the court's supplemental charges were reversibly defective because they allegedly failed to avoid favoring the government's case. Specifically, Fuiman argues that the court should have reinstructed the jury on the defendant's presumption of innocence and the meaning of "reasonable doubt".

We have read the court's supplemental charges and its original instructions as a whole,[10] and cannot agree. The supplemental instructions were, in our opinion, carefully balanced to avoid prejudicing either side's case before the jury. The court did remind the jury of the reasonable doubt standard, though it did not repeat its original full-blown explanation of that standard. While in some instances a complete reiteration of the government's burden of proof and the defendant's presumption of innocence may be the proper course for the trial judge to take,[11] we do not feel that the circumstances of this case warranted such action. In addition to reminding the jury of the government's burden of proof, the court read the statute as the jury had requested, briefly summarized the elements of the offenses charged in the indictment, and completely recharged the jury on the meaning of "knowingly" and "willfully." The court's instructions did not ignore any defense raised by Fuiman,[12] nor did they summarize the legal issues in a manner which in any way prejudiced Fuiman's case.[13] On the contrary, the supplemental charges were rather carefully constructed

---

**7.** As the court explained to the jury:

The Court has made a ruling which excludes from your further consideration the charges that are set forth in Counts III and V, which pertain to the alleged violations of the laws dealing with marijuana and hashish; so with regard to Counts III and V, you will not be called upon to consider the innocence or guilt of the defendant.

Now, with respect to Count I, which is the conspiracy count of the indictment, so much of that count as pertains to and charges a conspiracy to import marijuana and hashish is deleted, stricken.

So, with respect to Count I, the charge now before the jury and the Court, is the charge that this defendant conspired, confederated and agreed with others named therein to knowingly and willfully import into the United States, contrary to Federal law, a controlled substance, cocaine, but not to include a conspiracy to import marijuana and/or hashish.

Counsel, have I stated that clearly and sufficiently?

MR. FERGUSON: Yes, sir.

MR. NATALI: Yes, sir.

Tr. at 187–88.

**8.** Wherein the court stated,

[T]he gist of the offense charged in the conspiracy count of the indictment is the alleged combination or agreement between these defendants to violate Section 952(a), Title 21, United States Code, which has been read several times; and, specifically by unlawfully importing into the United States from a place outside thereof a narcotic controlled substance, cocaine.

Tr. at 345.

**9.** See the portion of the record quoted at 1159 *supra*.

**10.** *See United States v. Jackson*, 470 F.2d 684, 688 (5th Cir. 1972); *Perez v. United States*, 297 F.2d 12, 16 (5th Cir. 1961).

**11.** *See United States v. Sutherland*, 428 F.2d 1152, 1157–58 (5th Cir. 1970) (dictum).

**12.** *See United States v. Diamond*, 430 F.2d 688 (5th Cir. 1970); *Bland v. United States*, 299 F.2d 105 (5th Cir. 1962).

**13.** *Cf. United States v. Carter*, 491 F.2d 625, 633 (5th Cir. 1974) (condemning trial court's "ad-lib" explanation of circumstantial evidence through an example closely analogous to case *sub judice*).

**1162**

to avoid favoring either side of the case. Accordingly, Fuiman's argument that they were reversibly erroneous must fail.

### IV

In sum, we hold that the inconsistency in the jury's verdict as a whole does not invalidate the portion of that verdict which found Fuiman guilty of conspiracy to import cocaine; that the district court's supplemental instructions to the jury were sufficiently responsive to the jury's inquiry; and that the district court's supplemental instructions were not prejudicial in failing to include full instructions on the defendant's presumption of innocence and the government's burden of proof. Accordingly, the judgment of the district court is AFFIRMED.